UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA | ) | | |
| | ) | | |
| v. | ) | No. 1:04-cr-188 | |
| | ) | *Edgar* | |
| GARY MICHAEL BROCK, | ) | | |
| JERRY GILES BROCK, and | ) | | |
| DARRIN T. WEBB | ) | | |

## MEMORANDUM AND ORDER

The following motions are before the Court.

## I. Motion to Dismiss Superseding Indictment by Gary Michael Brock and Darrin Webb [Court Doc. No. 82]

Defendants Gary Michael Brock and Darrin Webb move to dismiss the superseding indictment on the ground of prosecutorial misconduct. The motion [Court Doc. No. 82] was filed by their former counsel, Fred Hanzelik.

The vague, conclusory motion is not supported by a memorandum of law. There is no factual basis or legal theory presented by the defendants in support of the motion. Defendants have not made a *prima facie* showing of any misconduct on the part of the prosecutor that would warrant the extraordinary remedy of dismissing the indictment. In the absence of specific factual allegations and a viable legal theory, the defendants are not entitled to an evidentiary hearing on this motion. The Court previously held an evidentiary hearing on the government's motion for judicial inquiry which resulted in the disqualification of attorney Hanzelik. The entire record, including the

proof submitted in connection with the judicial inquiry, does not establish any plausible basis for the defendants' allegation of prosecutorial misconduct.

The motion to dismiss [Court Doc. No. 82] is **DENIED**.

## II.     Defendants' Motions to Dismiss Count One
      [Court Doc. Nos. 47, 52, 78]

All three defendants move [Court Doc. Nos. 47, 52, 78] to dismiss Count One of the indictment. They contend that Count One fails to charge a criminal offense under the Hobbs Act, 18 U.S.C. § 1951. After the defendants filed these motions, the grand jury returned a second superseding indictment on March 8, 2005. Count One of the second superseding indictment remains essentially the same and charges a conspiracy in violation of 18 U.S.C. § 1951. Count Two of the second superseding indictment has been modified and now charges defendant Darrin Webb with aiding and abetting extortion under color of official right in violation of § 1951. In its brief, the government discusses both conspiracy to commit extortion under color of official right (Count One), and aiding and abetting such extortion (Count Two). In this opinion, the Court will discuss aiding and abetting extortion where appropriate but the Court confines its ruling here to the defendants' motions to dismiss Count One. Webb has not moved to dismiss Count Two.

After reviewing the record, the Court concludes that Count One of the second superseding indictment adequately charges a viable criminal offense of conspiracy to commit extortion under color of official right in violation of 18 U.S.C. § 1951. The defendants' motions to dismiss Count One [Court Doc. Nos. 47, 52, 78] are **DENIED**.

Count One charges that beginning in or about June 2001, and continuing until in or about June 2004, the defendants conspired with each other and with other persons to affect and attempt to affect interstate commerce and the movement of articles and commodities in interstate

commerce by extortion, as the term "extortion" is defined in 18 U.S.C. § 1951(b)(2), by actively soliciting the agreement and cooperation of a public official, deputy clerk Scott Simcox ("Simcox") of the General Sessions Court of Hamilton County, Tennessee, who would and did unlawfully obtain a sum of money not due from the defendants, with the defendants' consent, under color of official right and did commit at least one overt act in the Eastern District of Tennessee, including but not limited to the acts specified in Part B of Counts Three through Six of the indictment which are incorporated by reference, all in violation of 18 U.S.C. § 1951.

18 U.S.C. § 1951(a) provides in pertinent part: "Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by ... extortion or attempts or conspires so to do" shall be fined or imprisoned, or both. The term "extortion" is defined in 18 U.S.C. § 1951(b)(2). Extortion "means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, **or under color of official right**." (Emphasis supplied). 18 U.S.C. § 1951(b)(2) provides that there are two different kinds of extortion: (1) the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear; and (2) the obtaining of property from another, with his consent, under color of official right. *See Evans v. United States*, 504 U.S. 255, 265 (!992); *United States v. Valenzeno*, 123 F.3d 365, 371 n. 1 (6th Cir. 1997) (Moore, Judge, concurring in part and dissenting in part). To properly charge a criminal offense under 18 U.S.C. § 1951, the indictment does not have to allege both kinds of extortion. The indictment need only charge one kind of extortion.

-3-

Count One explicitly charges a conspiracy to commit extortion under color of official right. Count One charges the defendants with conspiracy to pay approximately $4,100 to a deputy court clerk Simcox.

Defendants raise the following arguments.

**A.**     **Extortion Under Color of Official Right Includes Bribery of Public Official**

Defendants argue that the factual allegations in Count One amount to nothing more than bribery of a public official and are insufficient to charge the offense of conspiracy to commit extortion under color of official right pursuant to 18 U.S.C. § 1951. Defendants assert that bribery is not within the reach of 18 U.S.C. § 1951 relying on *United States v. Capo*, 817 F.2d 947 (2nd Cir. 1987); *United States v. Collins*, 78 F.3d 1021 (6th Cir. 1996); and *United States v. Saadey,* 393 F.3d 669, 674 (6th Cir. 2005). Defendants contend that the bribery allegations in Count One more properly fall within the Tennessee criminal law proscribing bribery of a public servant, Tenn. Code Ann. § 39-16-102, and that the bribery offense should be left to prosecution by Tennessee state authorities. Defendants urge this Court to dismiss Count One of the indictment and allow Tennessee state law enforcement authorities to determine whether the defendants should be indicted and prosecuted for bribery under the Tennessee statute.

These arguments fail. Although the allegations in Count One may support a separate charge of bribery under Tennessee law, it is not a valid defense to the instant federal charge pursuant to 18 U.S.C. § 1951 of conspiracy to commit extortion under color of official right that the defendants may also be indicted and prosecuted for bribery under Tennessee law. *Evans*, 504 U.S. at 267 n. 18. It is irrelevant whether the defendants can be prosecuted for bribery of a public servant under Tennessee law and this has no impact on this Court's decision. This Court must determine

-4-

whether Count One is sufficient to charge the defendants with conspiracy to commit extortion under color of official right pursuant to 18 U.S.C. § 1951.

The defendants' argument that bribery is not within the reach of 18 U.S.C. § 1951 is incorrect and an overstatement of the law. It is well settled that extortion under color of official right does encompass the bribery of public officials. *Evans*, 504 U.S. 255; *United States v. Carmichael,* 232 F.3d 510 (6th Cir. 2000); *United States v. Valenzeno,* 123 F.3d 365, 371 n. 1 (6th Cir. 1997) (Moore, J., concurring in part and dissenting in part) (Bribery and extortion merge where the extortion is under color of official right); *United States v. Blandford,* 33 F.3d 685 (6th Cir. 1994); *United States v. Harding*, 563 F.2d 299, 302-06 (6th Cir. 1977).

The Supreme Court in *Evans* held that to convict a public official of the substantive offense of extortion under color of official right in violation of 18 U.S.C. § 1951, the government must prove that the public official obtained a payment to which he was not entitled, knowing that the payment was made in return for official acts. The government need not prove that the public official affirmatively requested or induced the payment/bribe in the first instance. *Evans*, 504 U.S. at 268; *see also United States v. Upshaw*, 2004 WL 2625070, ** 13 (6th Cir. Nov. 16, 2004), *petition for certiorari filed* May 13, 2005 (No. 04-1532). There is no requirement that public official use threats, force, or duress to commit extortion under color of official right because the coercive element is supplied by the existence of the public office itself. *United States v. Wright,* 797 F.2d 245, 250 (5th Cir. 1986); *United States v. Burkhart*, 682 F.2d 589, 592 (6th Cir. 1982); *United States v. Butler*, 618 F.2d 411, 418 (6th Cir. 1980).

In the present case, the defendants confuse and misapprehend the crucial distinction between (1) extortion under color of official right, and (2) extortion by means of threats or fear of

economic loss. In cases involving extortion by means of fear of economic loss, some federal courts have held that the mere commercial bribery of a private person who is not a public official cannot be prosecuted as extortion pursuant to 18 U.S.C. § 1951 where there is no fear of economic loss to the payors of the bribes. This principle is not applicable in the instant case because the defendants are indicted in Count One for conspiracy to commit extortion under color of official right.

The defendants' reliance on *Capo*, 817 F.2d 947, is misplaced. The Second Circuit's decision in *Capo* is inapposite. *Capo* is readily distinguishable on the facts and the law from the instant case because *Capo* did not involve extortion under color of official right. In *Capo*, an employee of a private corporation, the Eastman Kodak Company, engaged in a job-selling scheme. A corporation employee who occupied the position of employment counselor placed individuals in jobs at the Eastman Kodak Company in exchange for bribes of money and other items of personal property. Defendant Robert Capo was a local barber who used his influence and connections with other members of the conspiracy to obtain jobs for persons at the Eastman Kodak Company in exchange for money. The Second Circuit in *Capo* referred to the job-selling scheme, which did not involve a public official, as commercial bribery.

The government prosecuted the *Capo* case under 18 U.S.C. § 1951 on the sole theory that the defendants' activities constituted extortion by the wrongful use of fear of economic loss. Unlike the instant case, *Capo* did not involve extortion under color of official right. The defendants in *Capo* were convicted at trial. On direct appeal, the Second Circuit reversed and vacated the appellees/defendants' convictions holding that commercial bribery – bribery of a private person who is not a public official in the absence of any extortion through the wrongful use of actual or

threatened force, violence, or fear – is not within the reach of 18 U.S.C. § 1951. *Capo*, 817 F.2d at 954.

*Capo* distinguished between bribery of a private individual who is not a public official where there is no fear of economic loss to the payor of the bribe, and extortion based on the wrongful use of fear of economic loss. *See Valenzeno*, 123 F.3d at 369 (Sixth Circuit explains *Capo* and the distinction between commercial bribery and extortion through fear of economic loss). There was no extortion in *Capo* because the alleged "victims" of the job-selling scheme – persons who paid the commercial bribes to obtain jobs – did not face any fear of increased risk of economic loss if they chose not to pay the bribes. Rather, they only stood to gain and improve their economic positions by paying bribes to the defendants to get jobs. This was described by the *Capo* court as being a "classic case of bribery." There was no evidence that any of the payors had been coerced or threatened by the defendants into paying the bribes based on fear of economic loss. The payors were not actually victims of extortion. Instead, the proof established that they willingly, voluntarily paid the bribes for the purpose of improving their chances to get private jobs that they had been unable to obtain on their own. *Capo,* 817 F.2d at 954.

*Capo* clearly is of no help to the defendants in the instant case. The legal analysis and the distinction made in *Capo* between commercial bribery without fear of economic loss, and extortion by the wrongful use fear of economic loss are immaterial here. The instant case does not involve commercial bribery of a private person, and it is distinguishable from *Capo*. In the case at bar, Count One charges that defendants Gary Michael Brock, Jerry Brock, and Darrin Webb conspired to commit extortion under color of official right. This is a different theory of prosecution and extortion under § 1951(b)(2) compared to the extortion theory of prosecution (fear of economic

-7-

loss) utilized in *Capo*. The conspiracy to commit extortion under color of official right charged in Count One does not require the government to allege and prove that the defendants conspired to obtain property from another, with his consent, induced by the wrongful use of fear of economic loss.

*Collins*, 78 F.3d 1021, likewise does not assist the defendants in the present case. In *Collins*, 78 F.3d at 1029-30, the Sixth Circuit cites *Capo* with approval for the proposition that in cases where a defendant is charged with extortion based on fear of economic loss, commercial bribery is not within the reach of 18 U.S.C. § 1951. Based on *Capo*, the Sixth Circuit generally states in *Collins* that bribery is not within the reach of the Hobbs Act but this statement is made only in the context of extortion through the wrongful use of threats or fear of economic harm. Later, in a different part of the *Collins* opinion, the Sixth Circuit engages in a separate analysis of extortion under color of official right without any mention or discussion of *Capo* and commercial bribery. *Collins*, 78 F.3d at 1031-32. In sum, *Collins* does not hold that bribery of a public official falls outside the reach of § 1951 extortion under color of official right. As this Court reads and understands *Evans*, *Collins*, *Capo*, and the other relevant case law, extortion under color of official right can include cases involving the bribery of public officials.

The Sixth Circuit's decision in *Saadey*, 393 F.3d 669, is also distinguishable from the instant case and does not support the defendants' bribery argument. In *Saaday*, the defendant was a private citizen who was not a public official. He was charged *inter alia* with attempted extortion under color of official right in violation of 18 U.S.C. § 1951. The key to *Saadey* is that Mr. Saadey was not charged with either conspiracy to commit, or aiding and abetting, extortion under color of official right. The Sixth Circuit held that a private citizen, who is not in the process

-8-

of becoming a public official, can be convicted of extortion under the color of official right theory pursuant to § 1951 only if the private citizen either conspires with, or aids and abets, a public official in the act of extortion. *Saadey*, 393 F.3d at 674-76.

*Saadey* is inapposite here because the defendants in the instant case are charged in Count One with conspiring with a public official, Simcox, to commit extortion under color of official right in violation of 18 U.S.C. § 1951.

### B. Private Persons Can Be Prosecuted for Conspiring With Public Official to Commit Extortion Under Color of Official Right

Defendants next argue Count One is deficient and fails to charge them with extortion under color of official right because they are private citizens, and it is not alleged in the indictment that the defendants themselves personally took any action under color of official right. It is undisputed that the defendants are private citizens and not public officials. Defendants contend they cannot be charged with extortion under color of official right since they are merely accused of paying money bribes to a public official, Simcox. Defendants take the position that Count One fails to allege that they extorted money from any other persons. Defendants are not charged in Count One with conspiring with public official Simcox to extort money from third parties. Defendants contend they are the alleged payors of the bribes and they cannot be indicted for conspiring to extort money from themselves. Thus, the defendants seek to portray themselves as the "victims" (alleged payors of the bribes) of the extortion scheme charged in Count One. Defendants say that if there are any victims of the extortion conspiracy charged in Count One, it is them since they are accused of paying money to Simcox.

These arguments fail for the following reasons. Although Gary Michael Brock, Jerry Brock and Darrin Webb are private citizens and there is no allegation that the defendants themselves took any action under color of official right, this is not dispositive in a case of conspiracy to commit extortion under color of official right. As a general rule, prosecuting private persons for substantive (not conspiracy, and not aiding and abetting) offenses under the color of official right extortion theory is inappropriate, irrespective of the actual influence that the private person purports to have or maintain over government officials. *Saadey,* 393 F.3d at 674. The Sixth Circuit recognizes, however, that 18 U.S.C. § 1951 may reach private persons under some circumstances based on the "extortion under color of official right" theory of prosecution. A private person may be charged with and convicted of extortion under color of official right if he either conspires with, or aids and abets, a public official in the act of extortion. *Saadey,* 393 F.3d at 675; *Collins*, 78 F.3d at 1031-32; *accord, United States v. McLeczynsky*, 296 F.3d 634, 636-37 (7th Cir. 2002); *United States v. McLain*, 934 F.2d 822, 826-27 (7th Cir. 1991).

The key question in this case is whether a private person who pays a bribe to a public official can be prosecuted under 18 U.S.C. § 1951 for conspiracy to commit extortion under color of official right. The Sixth Circuit has not directly addressed this specific question. Other courts have held that a private person who pays a bribe to a public official can be prosecuted for conspiracy to commit extortion under color of official right, or for aiding and abetting such extortion, where the payor actively induces, solicits or procures the public official's "extortion," i.e. the payor does more than merely agree to, or acquiesce in, the payment of the bribe. A "victim" of such extortion – payor of a bribe – can cross the line and enter the realm of criminal conduct in violation of 18 U.S.C. § 1951 if he engages in more active conduct than simply agreeing to pay the public

-10-

official/extortioner, namely the payor is actively involved in conspiring with the public official to plan and perpetrate, or aid and abet the perpetration of, the extortion bribery scheme. A bribe payor's conduct may violate 18 U.S.C. § 1951 if it is part of a conspiracy to bribe a public official that goes beyond the mere acquiescence of a true innocent victim of extortion. *United States v. Corner-Ortiz*, 361 F.3d 29, 40 (1st Cir. 2004); *United States v. Spitler,* 800 F.2d 1267, 1276-79 (4th Cir. 1986); *United States v. Zeuli*, 725 F.2d 813, 817 (1st Cir. 1984); *United States v. Nelson*, 486 F. Supp. 464, 490-95 (W.D. Mich. 1980); *see also Wright*, 797 F.2d at 252-53.

This Court agrees with and follows this reasonable line of precedent. As a matter of logic and common sense, a private person who actively seeks to instigate and perpetrate the crime of extortion under color of official right by taking affirmative steps to solicit and induce a public official to accept a bribe cannot avoid criminal prosecution on a charge of conspiracy to commit (or aiding and abetting) extortion under 18 U.S.C. §1951 by resorting to the feeble argument that the bribe payor is somehow an innocent "victim" of the bribery extortion scheme. The Court concludes that Count One of the indictment is sufficient to charge a criminal offense under 18 U.S.C. § 1951 because it alleges that the defendants actively solicited the agreement and cooperation of public official Simcox in a conspiracy to commit extortion under color of official right. There is nothing in *Saadey*, *Collins*, and the other cases cited by the defendants that persuades the Court to reach a contrary decision.

Accordingly, the defendants' motions to dismiss Count One of the indictment [Court Doc. Nos. 47, 52, 78] are **DENIED**.

III. **Defendants' Motions to Dismiss
Counts Three - Six [Court Doc. Nos. 41, 64, 80]**

-11-

Defendants move to dismiss the mail fraud charges, Counts Three through Six of the second superseding indictment. [Court Doc. Nos. 41, 64, 80]. Defendants argue that these counts are deficient and fail to charge mail fraud under 18 U.S.C. § 1341 because the mailings in question, scire facias notices of bond forfeiture mailed to the Brock Bonding Company by the Hamilton County Sheriff's Department, were legally compelled to be mailed to the bond surety under Tennessee law, Tenn. Code Ann. § 40-11-139. Defendants rely on *Parr v. United States*, 363 U.S. 370 (1960); and *United States v. Maze*, 414 U.S. 395 (1974).

Defendants contend that when a person released from custody on bond fails to appear in the General Sessions Court of Hamilton County, Tennessee, the state court may order forfeiture of the bond. Tenn. Code Ann. § 40-11-139 mandates that the person be mailed a copy of the order of bond forfeiture and also that the bond surety (here Brock Bonding Company) be mailed a copy of the scire facias. Defendants assert that it was the non-appearance in court of a bonded person that triggered the legally compelled mailings of the scire facias notices to the bonding company pursuant to Tenn. Code Ann. § 40-11-139, not any conduct of the present defendants Gary Michael Brock, Jerry Brock, and Darrin Webb. The scire facias were mailed regardless of any conduct by these defendants. Defendants say they did not play a role with regard to the legally required mailings. It is argued that because the defendants did not contribute to the content and issuance of the charged mailings, it is incumbent upon the grand jury to more explicitly set forth facts in the indictment stating how and why the mailings are false and fraudulent. Defendants say it is not enough for the indictment to make a conclusory allegation that the legally compelled mailings were false and fraudulent without being more specific.

After reviewing the indictment, the Court concludes that the motions [Court Doc. Nos. 41, 64, 80] to dismiss the mail fraud counts are not well taken and they are **DENIED.**

### A.     <u>Standard of Review</u>

An indictment satisfies the Notice Clause of the Sixth Amendment to the United States Constitution if it: (1) sets out all of the elements of the offense and fairly informs a defendant of the charge against which he must defend; and (2) is sufficiently specific to enable the defendant to plead an acquittal or conviction in bar of future prosecutions for the same offense under the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution. *Hamling v. United States*, 418 U.S. 87, 117 (1974); *Russell v. United States,* 369 U.S. 749, 763-64 (1962); *United States v. Douglas,* 398 F.3d 407, 413 (6th Cir. 2005); *United States v. Anderson*, 182 F.3d 918 (Table, text at 1999 WL 503519 * 3 (6th Cir. July 9, 1999)); *United States v. Monus*, 128 F.3d 376, 388 (6th Cir. 1997); *United States v. Martinez*, 981 F.2d 867, 872 (6th Cir. 1992).

An indictment will usually be sufficient if it alleges the offense using the words of the statute itself, as along as the statute fully and unambiguously states all the elements of the offense. *Hamling*, 418 U.S. at 117; *Anderson*, 1999 WL 503519 at * 3; *United States v. Caldwell,* 176 F.3d 898, 901 (6th Cir. 1999); *United States v. Superior Growers Supply, Inc*., 982 F.2d 173, 176 (6th Cir. 1992). An indictment is presumed sufficient if it tracks the statutory language, cites the elements of the crimes charged, and provides approximate dates and times when the offenses are alleged to have been committed. *Anderson*, 1999 WL 503519 at * 3; *United States v. Chinchy*, 1 F.3d 1501, 1504 n. 3 (6th Cir. 1993).

Applying this standard, the Court concludes that Counts Three through Six of the indictment are sufficient to charge the defendants with mail fraud. These counts track the statutory language of 18 U.S.C. § 1341. Counts Three through Six allege all of the essential elements of mail fraud and fairly inform each defendant of the charge against which he must defend. The indictment

-14-

is specific enough to enable the defendants to plead an acquittal or conviction in bar of future prosecutions for the same offenses under the Double Jeopardy Clause of the Fifth Amendment.

### B. Elements of Mail Fraud Under 18 U.S.C. § 1341

The elements of mail fraud are: (1) devising or intending to devise a scheme to defraud, or to perform specified fraudulent acts; (2) involving a use of the mails; and (3) for the purpose of executing the scheme or attempting to do so. *United States v. Cantrell*, 278 F.3d 543, 546 (Cir. 2001);*United States v. Crossley*, 224 F.3d 847, 857 (Cir. 2000); *United States v. Hartsel*, 199 F.3d 812, 816 (Cir. 1999); *Frost*, 125 F.3d at 354; *United States v. Griffith*, 17 F.3d 865, 874 (6th Cir. 1994); *United States v. Frost*, 125 F.3d 346, 354 (6th Cir. 1997); *United States v. Oldfield*, 859 F.2d 392, 400 (6th Cir. 1988); *United States v. Henson*, 848 F.2d 1374, 1378 (6th Cir. 1988). All of these elements of mail fraud are properly alleged in Counts Three through Six of the indictment.

A defendant may commit mail fraud in violation of 18 U.S.C. § 1341 even if he personally has not used the mails. A mail fraud conviction requires only a showing that the defendant acted with the knowledge that use of the mails would follow in the ordinary course of business, or that an objectively reasonable person would have foreseen use of the mails. The government does not have to prove that the defendant actually intended to cause the mails to be used. *Cantrell,* 278 F.3d at 546; *Crossley*, 224 F.3d at 857; *Frost*, 125 F.3d at 354; *Griffith*, 17 F.3d at 874; *Oldfield*, 859 F.2d at 400. With one exception explained *infra* concerning the *Parr* case, the mailings themselves need not be false, and may be innocent, innocuous by nature, or even legally necessary. *Frost*, 125 F.3d at 354; *Henson*, 848 F.2d at 1378; *Oldfield*, 859 F.2d at 400; *United States v. DeCastris*, 798 F.2d 261, 263 (Cir. 1986).

-15-

The mailing need only be closely related to the scheme to defraud and reasonably foreseeable as a consequence of the defendant's actions. *Frost*, 125 F.3d at 354; *Oldfield*, 859 F.2d at 400. What matters is the causal connection between the mailings and the success of the scheme to defraud. *Henson*, 848 F.2d at 1379. The mail fraud statute is not designed to reach all frauds. It reaches only those limited instances in which use of the mails is a part of the execution of the fraud. *Schmuck v. United States*, 489 U.S. 705, 710 (1989); *Crossley*, 224 F.3d at 857; *Hartsel,* 199 F.3d at 816; *Frost*, 125 F.3d at 358. The relevant question is whether the mailing is part of the execution of the scheme as conceived by the perpetrator. *Schmuck*, 489 U.S. at 715; *Hartsel,* 199 F.3d at 816. To be part of the execution of the scheme, the use of the mails need not be essential element of the scheme to defraud. It is sufficient if the use of the mail is "incident to an essential part of the scheme," or a step in the scheme to defraud. *Schmuck*, 489 U.S. at 710-11; *Crossley*, 224 F.3d at 857; *Hartsel,* 199 F.3d at 816; *United States v. Montgomery*, 980 F.2d 388, 393 (6th Cir. 1992).

Although the mailings need not be essential to the scheme, the mailings must be sufficiently closely related to the scheme to defraud. The use of the mail must be in furtherance of the scheme to defraud. For a mailing to be in furtherance of a scheme to defraud, the scheme's completion or the prevention of its detection must have depended in some way on the charged mailing. The mailings must serve the purpose of executing or furthering the accomplishment of the scheme. *Hartsel,* 199 F.3d at 816, 818; *Frost*, 125 F.3d at 358-59; *Henson,* 848 F.2d at 1378.

C. *Parr* **Case and Legally Compelled Mailings**

With this background in mind, we turn to the analysis of *Parr*, 363 U.S. 370. In the relevant portions of *Parr,* the Supreme Court considered whether use of the mails to distribute tax

-16-

bills and to receive tax payments – which were misappropriated by members of a local school board – constituted mail fraud. The school board in Texas was under an express state constitutional mandate to levy and collect taxes for the operation of the school district. The school board was required by state statute to issue statements for taxes and to deliver receipts upon payment. *Parr*, 363 U.S. at 387. There was no proof that the tax bills were inflated or falsified to cover the subsequent misappropriation of the tax payments. There was nothing false about the mailings in and of themselves. The school board collected some taxes from nonresident property owners and was thus required by state law to use or cause a use of the mails.

The question presented in *Parr* was whether the legally compelled mailings of the lawful letters, tax statements, checks, and receipts as required by Texas state law was for the purpose of executing a scheme to defraud in violation of 18 U.S.C. § 1951. The *Parr* Court determined that the mailings were not shown to have been part of the execution of a scheme to defraud. The tax mailings were not incident to an essential part of the alleged scheme to defraud, or done for the purpose of executing a scheme to defraud within the meaning of § 1341. *Parr*, 363 U.S. at 391. "[W]e think it cannot be said that mailings made or caused to be made under the imperative demand of duty imposed by state law are criminal under the federal mail fraud statute . . . ." *Id.* The *Parr* Court emphasized that it was deciding the issue based on the unique facts and circumstances of the case. Regardless of any actions on the part of the defendants, the tax bills would have been mailed out anyway and payments of the taxes would have come to the coffers of the school district by mail as required by state law. The misappropriation of the tax funds occurred after the lawful tax bills and the tax payments had already legitimately been mailed.

-17-

In the later case of *Schmuck*, 489 U.S. 705, the Supreme Court placed a limit on its holding in *Parr*. *Schmuck*, 489 U.S. at 714-15, clarified that routine mailings which are innocent in themselves and contain no false information may supply the mailing element for mail fraud. The relevant consideration is always whether the mailing is part of the execution of the scheme to defraud as conceived by the perpetrator.

*Parr* stands for the proposition that mailings compelled and required by law, which are not themselves false and fraudulent, cannot be regarded as having been mailed for the purpose of executing a scheme to defraud in violation of the mail fraud statute, 18 U.S.C. § 1341. *United States v. Gray*, 790 F.2d 1290, (6th Cir. 1986), *reversed on other grounds sub nom. McNally v. United States*, 483 U.S. 350 (1987); *United States v. Curry*, 681 F.2d 406, 412 (5th Cir. 1982). The Sixth Circuit holds that *Parr* creates an additional element in mail fraud cases that must be stated in the indictment and proved at trial where the charged mailings are compelled by law. Where the government charges mail fraud pursuant to 18 U.S.C. § 1341 in connection with mailings compelled and required by law, the indictment must specifically charge that the documents mailed are themselves false and fraudulent. *Gray*, 790 F.2d at 1298.

Counts Three through Six of the indictment in the instant case comply with *Parr* and *Gray*, and are sufficient to charge mail fraud under 18 U.S.C. § 1341. It is undisputed that the mailings charged in the indictment are compelled and required by Tennessee law pursuant to Tenn. Code Ann. § 40-11-139. Part B on pages 3-7 of the indictment sets forth the allegations of the scheme to defraud. Paragraph 3 under Part B on page 4 of the indictment alleges that it was "part of the scheme to defraud that the defendant, GARY MICHAEL BROCK, would and did cause Brock Bonding to write bonds intending that if a bonded defendant jumped bond, Brock Bonding would

-18-

receive a notice by mail of that fact." Paragraph 4 under Part B on page 4 of the indictment alleges that it was further "part of the scheme to defraud that the defendants, GARY MICHAEL BROCK and JERRY GILES BROCK, would and did rely upon these notices to contact the deputy clerk of the court [Simcox] in order to have the final judgment dates removed from the court's bond docket."

Part C on pages 7-8 of the indictment sets forth allegations of the execution of the mail fraud scheme. It is alleged in Part C of the indictment that the charged mailings, the scire facias notices of bond forfeiture mailed by the state court to the Brock Bonding Company, were themselves "false and fraudulent." *Parr* and *Gray* do not require anything more to state a sufficient, viable charge of mail fraud in an indictment.

The Court is only addressing the question of whether Counts Three through Six of the indictment sufficiently state charges of mail fraud in violation of 18 U.S.C. § 1341. It remains to be seen whether the government can prove beyond a reasonable doubt at trial that the mailings charged in the indictment were themselves false and fraudulent in some way as required by *Parr* and *Gray*. The Court expresses no opinion here whether the legally compelled mailings of the scire facias to the Brock Bonding Company charged in the indictment were themselves false and fraudulent. These are disputed issues of fact that will have to be determined at trial based on the evidence. At this juncture, the Court cannot dismiss Counts Three through Six prior to trial without consideration of the government's evidence.

**D.     *Maze* Case**

The Supreme Court's decision in the mail fraud case of *Maze*, 414 U.S. 395, is inapposite and distinguishable from the instant case. In *Maze*, the defendant was accused of stealing his roommate's credit card, and using it without authorization to purchase food and lodging at

-19-

motels. The government contended that the mailing element was supplied by the defendant's knowledge that each motel proprietor would later mail an invoice to the bank that issued the stolen credit card, and the bank in turn would mail a bill to the true owner of the credit card for payment.

The *Maze* Court determined that the mailings could not support the mail fraud charges because the scheme to defraud reached fruition and was completed when the defendant checked out of the motels. The success of the scheme to defraud as charged in the indictment in no way depended upon the mailings. The mailings were immaterial to the execution of the scheme to defraud since the mailings merely determined which of the victims ultimately would bear the financial loss. *Maze*, 414 U.S. at 402.

*Maze* does not assist the defendants in the present case. The mail fraud charged in Counts Three through Six of the indictment did not reach fruition and were not completed prior to the mailings of the scire facias notices to the Brock Bonding Company. Moreover, the indictment sufficiently alleges that the mailings were incident to a part of the scheme to defraud. It is alleged that Gary Michael Brock and Jerry Brock would and did rely upon the scire facias notices to contact and pay the bribes to co-conspirator deputy clerk Simcox in order to have the final judgment dates removed and deleted from the state court's bond docket.

As explained *supra*, to be part of the execution of the scheme to defraud, the use of the mail need not be an essential element of the scheme. It is sufficient if the use of the mail is incident to an essential part of the scheme, or a step in the scheme to defraud. *Schmuck*, 489 U.S. at 710-11; *Crossley*, 224 F.3d at 857; *Hartsel*, 199 F.3d at 816; *Montgomery*, 980 F.2d at 393. The relevant issue is whether the mailings were part of the execution of the scheme to defraud as conceived by the perpetrators. *Schmuck*, 489 U.S. at 715; *Hartsel*, 199 F.3d at 816. The use of the

-20-

mail must be in furtherance of the scheme to defraud. For a mailing to be in furtherance of a scheme to defraud, the scheme's completion must have depended in some way on the charged mailing. The mailings must serve the purpose of executing or furthering the accomplishment of the scheme. *Hartsel,* 199 F.3d at 816, 818; *Frost*, 125 F.3d at 358-59; *Henson,* 848 F.2d at 1378. These are issues of fact for the jury to decide at trial and cannot be decided by the Court on pretrial motions to dismiss the indictment.

In sum, the indictment sufficiently alleges all of the essential elements of mail fraud and that the mailings were part of the execution of a scheme to defraud as conceived by the defendants. The indictment alleges that the use of the mail was in furtherance of the scheme to defraud in that the scheme's completion depended in some way on the charged mailings. This precludes dismissal of the mail fraud charges prior to trial. At this juncture prior to the presentation of evidence at trial, the Court cannot say that the charged mailings were entirely immaterial to the execution of the scheme to defraud.

Accordingly, the defendants' motions [Court Doc. Nos. 41, 64, 80] to dismiss the mail fraud charges, Counts Three through Six, are **DENIED.**

## IV. Defendant Webb's Motion to Dismiss Count Seven [Court Doc. No. 157]

Defendant Webb moves to dismiss Count Seven of the indictment. The motion [Court Doc. No. 157] is not well taken.

Count Seven charges that Webb violated 18 U.S.C. § 1001. It is alleged that in a matter within the jurisdiction of the Federal Bureau of Investigation, an agency of the United States Department of Justice, Webb knowingly and wilfully made a false, fictitious, and fraudulent material statement and representation, in that he falsely stated he had never paid anything to Scott Simcox,

-21-

a deputy clerk at the General Sessions Court of Hamilton County, Tennessee, when in truth and in fact, Webb had previously paid money to Simcox. The Court concludes that the allegations set forth in Count Seven are sufficient to charge an offense under 18 U.S.C. § 1001. All of the essential elements of the § 1001 offense are alleged in Count Seven. *United States v. Brown*, 151 F.3d 476, 484 (6th Cir. 1998) (elements of offense under 18 U.S.C. § 1001).

Webb argues that if he is correct that the Hobbs Act, 18 U.S.C. § 1951, and the mail fraud statute, 18 U.S.C. § 1341, are not applicable to the facts alleged in the indictment, then Count Seven should be dismissed because the charge of violating 18 U.S.C. § 1001 is dependent upon the matter being within the jurisdiction of the Federal Bureau of Investigation. The gist of Webb's argument is that his alleged false statement did not concern a matter within the jurisdiction of the Federal Bureau of Investigation for purposes of charging a crime pursuant to 18 U.S.C. § 1001 if the indictment fails to charge federal crimes under 18 U.S.C. §§ 1341 and 1951.

Webb's argument fails because the Court has determined that the Hobbs Act, 18 U.S.C. § 1951, and the mail fraud statute, 18 U.S.C. § 1341, are applicable to the facts alleged in the indictment. As discussed *supra*, the Court is denying the defendants' motions to dismiss Counts One through Six of the indictment.

Webb also argues that his alleged false statement was a mere denial of criminal wrongdoing and falls within the purported "exculpatory no" exception to 18 U.S.C. § 1001. Webb urges this District Court to follow and adopt the "exculpatory no" doctrine which he says has been recognized by a majority of the federal circuit courts and is discussed in *United States v. LeMaster*, 54 F.3d 1224, 1227-30 (6th Cir. 1995). This argument lacks merit. The Sixth Circuit never adopted or rejected the "exculpatory no" exception in *LeMaster* or any other reported case. In any event, the

Supreme Court in *Brogan v. United States*, 522 U.S. 398 (1998), held that the "exculpatory no" exception does not exist under 18 U.S.C. § 1001.

Webb's motion to dismiss Count Seven [Court Doc. No. 157] is **DENIED.**

## V.     Defendants' Motions for Severance
[Court Doc. Nos. 39, 60, 72, 74]

Jerry Brock and Gary Michael Brock each move pursuant to FED. R. CRIM. P. 14 for severance of their trials.[Court Doc. Nos. 39, 60]. Gary Michael Brock moves pursuant to FED. R. CRIM. P. 8 and 14 for severance of his trial from Darrin Webb. [Court Doc. No. 72]. Darrin Webb also moves pursuant to Rules 8 and 14 for severance of his trial from Gary Michael Brock . [Court Doc. No. 74].

The government opposes the motions for severance. [Court Doc. Nos. 101, 139, 146]. After reviewing the record, the Court concludes that for the reasons expressed by the government in its responses, all of the defendants' motions for severance [Court Doc. Nos. 39, 60, 72, 74] are **DENIED.**

Rule 14(a) provides that if the joinder of offenses or defendants in an indictment appears to prejudice a defendant, the Court in its discretion may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice may require. There is a preference for joint trials of defendants who are indicted together. *Zafiro v. United States*, 506 U.S. 534, 537 (1993); *Ross v. United States,* 339 F.3d 483, 493 (6th Cir. 2003); *United States v. Walls*, 293 F.3d 959, 966 (6th Cir. 2002); *United States v. Welch*, 97 F.3d 142, 148 (6th Cir. 1996); *United States v. Cobleigh*, 75 F.3d 242, 247 (6th Cir. 1996); *United States v. Brenig*, 70 F.3d 850, 852-53 (6th Cir. 1995); *Sherlin v. United States,* 67 F.3d 1208, 1215 (6th Cir. 1995);  *United States v. Pierce*, 62 F.3d 818, 829-30 (6th Cir. 1995); *United States v. Warner*, 97 F.2d 971, 1189, 1196 (6th Cir. 1992).

Federal courts strongly favor joint trials of defendants who are indicted together because it promotes judicial efficiency and serves the interests of justice by avoiding the inequity of inconsistent verdicts. *Zafiro*, 506 U.S. at 537; *United States v. Cope*, 312 F.3d 757, 779 (6th Cir. 2002); *Brenig*, 70 F.3d at 852-53. The jury is presumed to be capable of following the Court's instructions, sorting out the evidence, and giving separate consideration to each charge against each individual defendant. *Walls*, 293 F.3d at 966; *Welch*, 97 F.3d at 147; *Cobleigh*, 75 F.3d at 247; *Sherlin,* 67 F.3d at 1215; *United States v. Moore,* 917 F.2d 215, 222 (6th Cir. 1990).

There is a strong policy presumption in favor of joint trials for codefendants when the criminal charges result from the same acts and will be proved by the same evidence. *United States v. Critton*, 43 F.3d 1089, 1098 (6th Cir. 1995); *Moore,* 917 F.2d at 220. This is especially true when the defendants are charged with joint participation in a conspiracy or common scheme. *Cope,* 312 F.3d at 780; *United States v. Weiner*, 988 F.2d 629, 634 (6th Cir. 1993); *United States v. Blakeney*, 942 F.2d 1001, 1011 (6th Cir. 1991); *United States v. Horton*, 847 F.2d 313, 317 (6th Cir. 1988).

A severance of trials will be granted only if there is a serious risk that a joint trial would compromise a specific trial right of a defendant, or prevent the jury from making a reliable judgment about a defendant's guilt or innocence. *Zafiro*, 506 U.S. at 539; *United States v. Delgado*, 350 F.3d 520, 526 (6th Cir. 2003); *Cope,* 312 F.3d at 780; *Walls*, 293 F.3d at 966; *United States v. Long*, 190 F.3d 471, 476 (6th Cir. 1999); *Cobleigh*, 75 F.3d at 248; *United States v. Bond*, 22 F.3d 662, 666 (6th Cir. 1994). Defendants who are indicted together do not have a right to severance and separate trials simply because they may have a better chance of acquittal if they are tried alone. *Ross*, 339 F.3d at 493; *Long*, 190 F.3d at 476; *Welch*, 97 F.3d at 148; *Brenig*, 70 F.3d at 853;

-24-

*Warner*, 971 F.2d at 1196. A defendant is not entitled to severance of trials merely because the incriminating proof is greater against a codefendant. *Id.*

To obtain a severance, the defendants bear the burden of showing factually specific and compelling prejudice that will mislead or confuse the jury. *Welch*, 97 F.3d at 148; *Cobleigh*, 75 F.3d at 853; *Moore,* 917 F.2d at 221. The Court finds that the defendants have not met their burden of showing prejudice and a need for severance of trials.

Each defendant contends there are statements made by his codefendants not within the scope of the charged conspiracy, and the introduction of such statements into evidence at trial would violate the right to confrontation of witnesses guaranteed by the Sixth Amendment to the United States Constitution. Defendants rely on *Bruton v. United States*, 391 U.S. 123, 126-28 (1968); and *Crawford v. Washington*, 541 U.S. 36 (2004). Citing *Bruton* and *Crawford*, the defendants further argue that severance is necessary because the admission into evidence of any statements made by codefendants to FBI agents or other government witnesses would violate the Sixth Amendment right to confrontation of witnesses.

In response, the government explains that it does not intend to offer into evidence at trial any confessions by codefendants that would violate the *Bruton* rule. The government proposes to redact any confessions by nontestifying codefendants to comply with *Bruton*. The procedure of redacting statements is sufficient to satisfy the Sixth Amendment and *Bruton* rule. The defendants' Sixth Amendment confrontation rights can be adequately protected by redaction.

*Bruton* held that the admission of a nontestifying codefendants' confession into evidence at a joint trial may violate a defendant's Sixth Amendment right to be confronted with the witnesses against him, even when the jury is instructed to consider the confession only against the codefendant

who made the confession. The potential prejudice to the nonconfessing defendant may not be dispelled merely by a limiting jury instruction. *Bruton*, 391 U.S. at 132; *Cobleigh*, 75 F.3d at 248. The *Bruton* rule rests on the concern that a nontestifying codefendants' confession can be so "powerfully incriminating" that the jurors may be unable to refrain from attributing it to the nonconfessing defendant as well. *Richardson v. Marsh*, 481 U.S. 200, 207 (1987); *Simpson*, 2004 WL 2452716 at ** 4.

      *Bruton's* "narrow exception" to the almost invariable legal principle that jurors are presumed to be capable of following and complying with the Court's instructions applies only when the nontestifying codefendants' confession expressly implicates the defendant as his accomplice or coconspirator in the crime. *Marsh*, 481 U.S. at 208; *Simpson*, 2004 WL 2452716 at ** 4; *Sherlin*, 67 F.3d at 1215; *Cobleigh*, 75 F.3d at 248. In *Marsh*, the confession of a nontestifying codefendant was properly redacted to omit any reference at all to the defendant. The confession only became incriminating to the defendant when it was linked with other evidence at trial. *Marsh*, 481 U.S. at 208. The *Marsh* Court approved the redaction and found that *Bruton* was distinguishable because the redacted codefendant's confession in *Marsh* did not expressly implicate the defendant as an accomplice. Thus, the *Marsh* Court held that the Confrontation Clause in the Sixth Amendment and the *Bruton* rule are not violated by the admission of a nontestifying codefendants' confession with a proper limiting instruction to the jury when the confession is redacted to eliminate not only the defendant's name, but all references to the defendant's existence. *Marsh*, 481 U.S. at 208; *accord Simpson*, 2004 WL 2452716 at ** 4; *Sherlin*, 67 F.3d at 1215-16; *Cobleigh*, 75 F.3d at 248; *United States v. DiCarlantonio*, 870 F.2d 1058, 1062 (6th Cir. 1989); *see also Gray v. Maryland*, 523 U.S. 185 (1998) (Use of redacted at joint trial violates the *Bruton* rule where the defendant's name is

replaced with an obvious blank space, a word such as "deleted," a symbol, or other similarly obvious symbols of alteration).

In *Crawford*, 541 U.S. 36, the Supreme Court held that testimonial out-of-court statements by witnesses that are offered against the accused to establish the truth of the matter asserted are barred by the Sixth Amendment's Confrontation Clause and cannot be introduced into evidence at trial, unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness. *Id.* at 59, 68; *United States v. Cromer*, 389 F.3d 662, 671 (6th Cir. 2004). The *Crawford* Court said that where testimonial statements are involved, the Framers of the Constitution did not intend to leave an accused's right under the Sixth Amendment to confront his accusers "to the vagaries of the rules of evidence, much less to amorphous notions of 'reliability.'" *Crawford*, 541 U.S. at 61. *Crawford* does not comprehensively define what is "testimonial." At a minimum, the term "testimonial" applies to "prior testimony at a preliminary hearing, a grand jury, or at a former trial; and to police interrogations." *Id.* at 68; *see also Cromer*, 389 F.3d at 671-72.

For *Crawford* to apply, the out-of-court statement must be testimonial in nature. *United States v. Saget*, 377 F.3d 223, 226-30 (2nd Cir. 2004), *supplemented* 2004 WL 1950414, *cert. denied*, 125 S.Ct. 938, 160 L.Ed.2d 821 (2005). If the out-of-court statement is not testimonial, then the Sixth Amendment's Confrontation Clause does not bar its admission into evidence so long as the statement falls within a firmly rooted hearsay exception or contains particularized guaranties of trustworthiness. *Id.* at 230 (applying *Ohio v. Roberts*, 448 U.S. 56 (1980) to nontestimonial out-of-court statements in the wake of *Crawford*). For example, casual out-of-court statements to a friend or acquaintance are not testimonial. *Crawford,* 541 U.S. at 51 ("An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual

remark to an acquaintance does not."); *United States v. Lee*, 374 F.3d 637, 644 (8th Cir. 2004); *Cromer*, 389 F.3d at 672.

The government asserts that the statements it intends to offer as evidence at trial do not violate the *Bruton* rule and do not constitute impermissible testimonial hearsay under *Crawford*. The government says it may seek to offer statements that fall into three categories. The first category is confessions or admissions of the defendants themselves. This does not justify a severance of trials. As explained *supra*, nontestifying codefendants' confessions can be redacted to comply with *Bruton* and *Marsh*. Moreover, a confession or admission by a defendant is admissible against him pursuant to FED. R. EVID. 801(d)(2)(A). A defendant's own admission may be admitted against him under Rule of Evidence 801(d)(2)(A), and this rule is not affected by *Bruton* and *Crawford*.

The second category is statements made by the defendants during and in furtherance of the conspiracy. Such statements are admissible pursuant to FED. R. EVID. 801(d)(2)(E). Rule 801(d)(2)(E) is not affected by Confrontation Clause of the Sixth Amendment, *Bruton,* and *Crawford*. *United States v. Sexton*, 2005 WL 65514, ** 4 (6th Cir. Jan. 6, 2005); *see also United States v. Inadi*, 475 U.S. 387, 399-400 (1986); *United States v. Salgado*, 250 F.3d 438, 450 (6th Cir. 2001). Statements made by a defendant in furtherance of a conspiracy are not by their nature testimonial for purposes of applying *Crawford*. *Crawford*, 541 U.S. at 56; *see also Cromer*, 389 F.3d at 673-74; *Lee*, 374 F.3d at 644. This is because statements made in furtherance of a conspiracy are not made in circumstances in which an objectively reasonable person would anticipate or understand that the statements would be used by law enforcement authorities to investigate and prosecute a crime. *Cf. Saget,* 377 F.3d at 226-30; *Cromer*, 389 F.3d at 673-75. A

-28-

conspirator who makes a statement in furtherance of a conspiracy does not intend to bear testimony against a coconspirator.

The third category is out-of-court statements not offered to prove the truth of the matter asserted. Such statements are admissible and are not affected by *Bruton* and *Crawford*. When an out-of-court statement is not offered to prove the truth of the matter asserted, it is not hearsay under FED. R. EVID. 801(c), and the Confrontation Clause in the Sixth Amendment is not implicated. *Crawford*, 541 U.S. at 59 n. 9 (Sixth Amendment's Confrontation Clause does not bar the use and admission of out-of-court testimonial statements for purposes other than establishing the truth of the matter asserted); *Tennessee v. Street*, 471 U.S. 409, 413 (1985); *Sexton*, 2005 WL 65514 at ** 4; *Cromer,* 389 F.3d at 676; *Anthony v. Dewitt,* 295 F.3d 554, 563 (6th Cir. 2002); *Sherlin,* 67 F.3d at 1216; *United States v. Martin*, 897 F.2d at 1371 (Cir. Jan. 6, 2005).

Finally,Gary Michael Brock and Darrin Webb move for a severance of their trials on the ground that the allegations against them in the indictment are not related and are not properly joined under FED. R. CIV. P. 8(b). Rule 8(b) provides that an indictment may join and charge two or more defendants "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count."

This argument fails. The Court has reviewed the second superseding indictment and concludes that the charges against Gary Michael Brock and Darrin Webb have been properly joined pursuant to Rule 8. The joinder of the charges does not cause prejudice that warrants a severance of their trials under Rule 14.

-29-

Accordingly, the defendants' motions for severance [Court Doc. Nos. 39, 60, 72, 74] are **DENIED.**

SO ORDERED.

ENTER this *6th day of June, 2005*.


_____*/s/ R. Allan Edgar*_____
R. ALLAN EDGAR
CHIEF UNITED STATES DISTRICT JUDGE